**BELMORA LLC, Plaintiff,**

v.

**BAYER CONSUMER CARE AG & Bayer Healthcare LLC, Defendants–Consolidated Plaintiffs,**

v.

**Belmora, LLC, Jamie Belcastro, & Does 1–10, Inclusive, Consolidated Defendants.**

**Case No. 1:14–cv–00847–GBL–JFA.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed Feb. 6, 2015.

Craig Crandall Reilly, Law Office of Craig C. Reilly, Alexandria, VA, John Nolan Jennison, Law Offices Jennison & Shultz, P.C., Arlington, VA, for Plaintiff.

Robert J. Shaughnessy, Eric Christopher Wiener, James Norman Bierman, Jr., Williams & Connolly LLP, Washington, DC, for Defendants–Consolidated Plaintiffs.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Belmora LLC's ("Belmora") Motion to Dismiss Bayer Consumer Care AG and Bayer Healthcare's Complaint ("Motion to Dismiss Complaint") (Doc. 36), Belmora's

Motion to Dismiss Bayer CC AG's Counterclaim ("Motion to Dismiss Counterclaim") (Doc. 45), and Belmora's Motion for Judgment on the Pleadings (Doc. 55). This case arises from Bayer Consumer Care AG and Bayer Healthcare's (collectively "Bayer") claims that Belmora's FLANAX trademark should be cancelled because Belmora deceives consumers into thinking that its FLANAX brand of pain relief medicine is the same FLANAX brand under which Bayer has sold pain relief medicine in Mexico for decades. The Trademark Trial and Appeal Board ("TTAB") cancelled Belmora's trademark. The parties seek review of that decision and bring additional causes of action.

There are six issues before the Court. The first issue is whether the Court should dismiss Count I of Bayer's Complaint, alleging that Belmora violated Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which prohibits the false designation of origin, because Bayer lacks standing to bring the statutory cause of action. The second issue is whether the Court should dismiss Count II of Bayer's Complaint, alleging that Belmora violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which prohibits false advertising, because Bayer lacks standing to bring the statutory cause of action. The third issue is whether the Court should dismiss Bayer's California state law claims. The fourth issue is whether the Court should dismiss Bayer's Article 6bis counterclaim and affirm the TTAB's dismissal of Bayer's Article 6bis claim because Section 44(b) of the Lanham Act, 15 U.S.C. § 1126(b), which implements the Paris Convention, does not protect foreign mark owners beyond the protections already afforded by the Lanham Act. The fifth issue is whether the Court should grant Belmora's Motion for Judgment on the Pleadings and affirm the TTAB's holding that Bayer had standing to bring a misrepresentation of source action under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because Bayer is not within the class of plaintiffs Congress sought to protect under Section 14(3). The sixth issue is whether the Court should grant Belmora's Motion for Judgment on the Pleadings and affirm the TTAB's holding that Belmora misrepresented the source of FLANAX under Section 14(3) because there is a use requirement in a misrepresentation of source action.

This may be a case of first impression which presents novel questions about the reach of the Lanham Act. Belmora's FLANAX, trademarked and sold in the United States, has a similar trade dress to Bayer's FLANAX and is marketed in a way that capitalizes on the goodwill of Bayer's FLANAX, which is trademarked and sold in Mexico. The Court has grappled with whether Belmora's FLANAX mark deceives the public in a manner prohibited by the Lanham Act. The issues in this case can be distilled into one single question: Does the Lanham Act allow the owner of a foreign mark that is not registered in the United States and further has never used the mark in United States commerce to assert priority rights over a mark that is registered in the United States by another party and used in United States commerce? The answer is no. Accordingly, the TTAB's decision cancelling the registration of Belmora's FLANAX mark is REVERSED and Belmora's Motion to Dismiss Complaint, Motion to Dismiss Bayer's Counterclaim, and Motion for Judgment on the Pleadings are GRANTED.

The Court GRANTS Belmora's Motion to Dismiss Complaint for two reasons. First, the Court GRANTS Belmora's Motion to Dismiss the false designation of origin claim because Bayer lacks standing

to sue under Section 43(a)(1)(A) of the Lanham Act pursuant to *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* — U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 43(a)(1)(A) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion to Dismiss the false advertising claim because Bayer lacks standing to sue under Section 43(a)(1)(B) of the Lanham Act as Bayer did not sufficiently plead an injury to commercial interest in sales or business reputation proximately caused by Belmora's alleged misrepresentations as required by *Lexmark.* Furthermore, the Court DISMISSES Bayer's state law claims because they have no federal claim to attach to as both of the federal claims are dismissed.

The Court GRANTS Belmora's Motion to Dismiss Bayer's Counterclaim and AFFIRMS the TTAB's dismissal of Bayer's Article *6bis* claim because Bayer's claim that it can bring an action under Article *6bis* against Belmora is implausible as the Paris Convention is not self-executing and Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h), do not make Article *6bis* of the Paris Convention a ground for contesting trademark registration.

The Court GRANTS Belmora's Motion for Judgment on the Pleadings for two reasons. First, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Bayer had standing to seek cancellation of the registration of Belmora's FLANAX mark under Section 14(3) because Bayer lacks standing to sue pursuant to *Lexmark* as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 14(3) and

Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Belmora was using the FLANAX mark to misrepresent source because Section 14(3) requires use of the mark in United States commerce and Bayer did not use the FLANAX mark in the United States.

## I. BACKGROUND

Belmora is a Virginia limited liability company formed in 2002. It is owned and operated by Jamie Belcastro. (Doc. 1 ¶¶ 9–10.) Belmora operates in the United States and sells over-the-counter pain relief products under the FLANAX brand name. (*Id.* ¶ 10.) FLANAX was originally an "analgesic tablet that contained naproxen sodium as its active ingredient," but the brand has since grown to encompass liniment and lozenges. (*Id.* ¶¶ 11–12.) On October 6, 2003, Belmora filed an application with the United States Patent and Trademark Office ("PTO") to register the FLANAX mark for the analgesic tablets. (*Id.* ¶ 13.) This application was published for opposition on August 3, 2004, and the PTO issued the registration for the FLANAX mark on February 1, 2005. (*Id.* ¶¶ 14–15.) Belmora has used the FLANAX mark in interstate commerce in the United States since March 1, 2004. (*Id.* ¶ 17.)

Bayer Consumer Care AG, a Swiss corporation, Bayer Healthcare LLC, a Delaware limited liability company, and predecessors have sold analgesics in Mexico under the Mexican-registered trademark FLANAX since the 1970s. Bayer Compl. ¶¶ 1–2, 9, 14. Bayer does not possess a trademark for FLANAX in the United States. (*Id.* ¶¶ 26–31.) Bayer attempted

to register FLANAX in the United States in 2004 but the PTO rejected the application based on Belmora's preexisting efforts to register the mark. (Doc. 35 ¶¶ 32–36.) Bayer has sold hundreds of millions of dollars of FLANAX products in Mexico. Bayer Compl. ¶ 11. Bayer promotes FLANAX in Mexico, including in major cities near the United States–Mexico border, but has never marketed or sold FLANAX in the United States. (*Id.* ¶ 12; Doc. 35 ¶¶ 56–57.) Bayer has never received approval from the FDA through a New Drug Application to market or sell FLANAX in the United States. (Doc. 35 ¶¶ 53–61.)

Belmora's early packaging of FLANAX was "virtually identical" to that of Bayer's FLANAX, including a similar color scheme, font size, and typeface.[1] Bayer Compl. ¶¶ 21–25. Belmora has since changed its packaging, but this modified scheme remains similar to that of Bayer's FLANAX. (*Id.* ¶ 26.) Belmora's marketing messages often suggested a historical connection between its FLANAX and Latino customers. (*Id.* ¶¶ 30–35.)

On June 29, 2007, Bayer petitioned the TTAB to cancel the registration of Belmora's FLANAX mark. (Doc. 37 at 2.) After several years of litigation, on April 14, 2014, the TTAB issued a ruling canceling Belmora's FLANAX registration pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3). *Bayer Consumer Care AG v. Belmora LLC,* 110 U.S.P.Q.2d 1623, 2014 WL 1679146 (T.T.A.B.2014). On June 3, 2014, Belmora filed a Notice of Appeal to the Federal Circuit with the TTAB; however, on June 13, 2014, Bayer filed its Notice of Election to Have Review by Civil Action with the TTAB. (Doc. 37 at 3–4.)

On June 6, 2014, Bayer sued Belmora in the United States District Court for the Southern District of California. *See Bayer Consumer Care AG v. Belmora, LLC,* No. 3:14–cv–01395 (S.D.Cal.). Shortly thereafter, Bayer filed a notice of voluntary dismissal because "the case was filed in the wrong district." (Doc. 37 at 3 n. 2.) On June 9, 2014, Bayer refiled its complaint in the Central District of California. *See Bayer Consumer Care AG v. Belmora, LLC,* No. 2:14–cv–04433 (C.D.Cal.). On June 12, 2014, the United States District Court for the Central District of California issued an order to show cause as to why the case should not be transferred either to the District of New Jersey or the Eastern District of Virginia. (Doc. 37 at 3–4.) The Central District of California case was eventually transferred and consolidated with the present action. (*Id.* at 4.)

## II. DISCUSSION

### A. Standards of Review

#### 1. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to move for dismissal by challenging the sufficiency of the plaintiff's complaint. FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion should be granted where the plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To be facially plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554

---

1. The TTAB found that Belmora copied the logo and trade dress of Bayer's FLANAX. *See Bayer Consumer Care AG v. Belmora LLC,* 110

U.S.P.Q.2d 1623, 2014 WL 1679146, at *11 (T.T.A.B.2014).

(4th Cir.2013) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, which if taken as true, "raise a right to relief above the speculative level" and "nudg[e] [the] claims across the line from conceivable to plausible." *Vitol, ·S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir.2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The requirement for plausibility does not mandate a showing of probability but merely that there is more than a possibility of the defendant's unlawful acts. *Francis v. Giacomelli*, 588· F.3d 186, 193 (4th Cir.2009) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As a result, a complaint must contain more than "naked assertions" and "unadorned conclusory allegations" and requires some "factual enhancement" in order to be sufficient. *Id.* (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). In addition to the complaint, the court will also examine "documents incorporated into the complaint by reference," as well as those matters properly subject to judicial notice. *Clatterbuck*, 708 F.3d at 557 (citations omitted); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir.2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322,· 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

A court's Rule 12(b)(6) review involves separating factual allegations from legal conclusions. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir.2012). In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.2011) (citations omitted). Though a court must accept the truthfulness of all factual allega-

tions, it does not have to accept the veracity of bare legal conclusions. *Burnette*, 687 F.3d at 180 (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir.2011)).

A court must grant a Rule 12(b)(6) motion where a complaint fails to· provide sufficient nonconclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *Giacomelli*, 588 F.3d at 196–97 (citing *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937; *Gooden v. Howard County*, 954 F.2d 960, 969–70 (4th Cir.1992) (en banc)).

## 2. Motion for Judgment on the Pleadings

Rule 12(c) provides that, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).· "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir.2014) (citing *Butler v. United States*, 702 F.3d 749, 752 (4th Cir.2012)). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir.2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999)). A court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir.2014) (citations omitted). However, a court is not required to "accept allegations that represent unwarranted inferences, unreasonable conclusions or arguments, or that contradict matters properly subject to judicial notice or by exhibit." *Id.* (internal quotation marks omitted) (citing *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir.2006)).

### 3. De Novo Review of TTAB Decision

15 U.S.C. § 1071(b)(1) "permits a party in a trademark suit to initiate a civil action in the place of an appeal of the TTAB's determination to the Federal Circuit." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir.2014). "In a § 1071(b) action, the district court reviews the record de novo and acts as the finder of fact. The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims." *Id.* (citing 15 U.S.C. § 1071(b)(1); *Durox Co. v. Duron Paint Mfg. Co.*, 320 F.2d 882, 883–84 (4th Cir. 1963)).

### B. Analysis

The Court GRANTS Belmora's Motion to Dismiss Complaint for two reasons. First, the Court GRANTS Belmora's Motion to Dismiss the false designation of origin claim because Bayer lacks standing to sue under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), pursuant to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 43(a)(1)(A) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion to Dismiss the false advertising claim because Bayer lacks standing to sue under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as Bayer did not sufficiently plead an injury to commercial interest in sales or business reputation proximately caused by Belmora's alleged misrepresentations as required by *Lexmark*. Furthermore, the Court DISMISSES Bayer's state law claims because they have no federal claim to attach to as both of the federal claims are dismissed.

The Court GRANTS Belmora's Motion to Dismiss Bayer's Counterclaim and AFFIRMS the TTAB's dismissal of Bayer's Article *6bis* claim because Bayer's claim that it can bring an action under Article *6bis* against Belmora is implausible as the Paris Convention is not self-executing and Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h), do not make Article *6bis* of the Paris Convention a ground for contesting trademark registration.

The Court GRANTS Belmora's Motion for Judgment on the Pleadings for two reasons. First, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Bayer had standing to seek cancellation of the registration of Belmora's FLANAX mark under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because Bayer lacks standing to sue pursuant to *Lexmark* as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 14(3) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Belmora was using the FLANAX mark to misrepresent source because Section 14(3) requires use of the mark in United States commerce and Bayer did not use the FLANAX mark in the United States.

### A. *False Designation of Origin*

The Court GRANTS Belmora's Motion to Dismiss the false designation of origin claim because Bayer lacks standing to sue under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). The Su-

preme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), provides this Court with guidance in determining whether a plaintiff has standing to bring a claim under the Lanham Act. In *Lexmark,* supplier Static Control alleged that manufacturer Lexmark engaged in false advertising in violation of the Lanham Act. Static Control supplied remanufacturers with a microchip that allowed them to refurbish and resell Lexmark toner cartridges. *Id.* at 1383. Static Control claimed that Lexmark "disparaged its business and products by asserting that Static Control's business was illegal," and that it designed, manufactured, and sold microchips whose only use/purpose was to refurbish Lexmark toner cartridges. *Id.* at 1393–94. The Court held that Static Control had standing because it *"alleged an adequate basis to proceed under* § 1125(a)." *Id.* at 1395 (emphasis in original). In so doing, the Court created a two-pronged test to determine whether a plaintiff has standing to bring a statutory cause of action.

■ . In *Lexmark,* the Supreme Court "establish[ed] the zone-of-interests test and proximate causality requirement as the proper analysis for analyzing standing to allege a claim under the Lanham Act." *Syngenta Seeds, Inc. v. Bunge N. Am., Inc.,* 773 F.3d 58, 64 (8th Cir.2014). First, the plaintiff's allegations must demonstrate that the plaintiff is in the statute's zone of interests. Second, the complaint must allege injuries tying the harm suffered to the defendant's conduct.

■ Under the zone-of-interests test, a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked. This test is not "especially demanding." *Lexmark,* 134 S.Ct. at 1389 (citations and internal quotation marks omitted). When applying the zone of in-

terests test, the plaintiff receives the "benefit of *any* doubt." *Id* (emphasis added). Furthermore, the zone-of-interests test "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (citations and internal quotation marks omitted). Lost sales and damage to business reputation are "injuries to precisely the sorts of commercial interests the [Lanham] Act protects." *Id.* at 1393; *see also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 310 (4th Cir.2012) (quoting *Nintendo of Am., Inc. v. Aeropower Co.,* 34 F.3d 246, 250 (4th Cir.1994) ("[W]e have reasoned that the archetypal injury contemplated by the Act is harm to the plaintiff's 'trade reputation in United States markets.' ")).

■ The proximate cause requirement requires a plaintiff bringing a claim under Section 43(a) to show "economic or reputational injury flowing directly" from the defendant's alleged violation of the statute. *Lexmark,* 134 S.Ct. at 1391. The Supreme Court identified injuries flowing from an audience's belief in disparaging remarks and equating a product with an inferior product as examples of reputational harm. *Id.* at 1393 (citing *McNeilab, Inc. v. Am. Home Prods. Corp.,* 848 F.2d 34, 38 (2d Cir.1988) (disparaging statements); *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.,* 799 F.2d 6, 7–8, 11–12 (1st Cir.1986) (equating with inferior product); *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d 120, 122, 125 (2d Cir.1984) (same)); *see also PBM Prods., LLC v. Mead Johnson & Co.,* 639 F.3d 111, 127 (4th Cir.2011) (observing that a mailer deterring consumers from using a manufacturer's product damaged the manufacturer's reputation); *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.,*

618 F.3d 441, 453 (4th Cir.2010) (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir.1987)) ("[P]laintiffs reputation would suffer damage if the shirt appeared to be of poor quality.").

### 1. *Zone of Interests*

■ The Court holds that Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 43(a) of the Lanham Act because Bayer does not possess a protectable interest in the FLANAX mark in the United States. Whether a plaintiff comes within "the zone of interests" is an issue that requires the Court to interpret the statute to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 134 S.Ct. at 1387 (citations and internal quotation marks omitted). Section 43(a)(1)(A) imposes civil liability on:

> [a]ny person who, on or in connection with any goods or services, ... uses in commerce any word ... [or] name ..., or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A). Congress described the purposes of the Lanham Act as follows:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

Lanham Act § 45, 15 U.S.C. § 1127. The Supreme Court observed that "[m]ost of the enumerated purposes are relevant to false-association cases."[2] *Lexmark*, 134 S.Ct. at 1389. The Supreme Court has previously explained that the Lanham Act "provides *national protection of trademarks* in order to secure to *the owner of the mark* the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (emphasis added).

■ Congress, the Fourth Circuit, and the Supreme Court have all recognized that a key purpose of the Lanham Act is to protect the interests of those with a protectable interest in a mark. *See* 15 U.S.C. § 1127; *Park 'N Fly*, 469 U.S. at 198, 105 S.Ct. 658; *Am. Petroleum Inst. v. Cooper*, 718 F.3d 347, 359 (4th Cir.2013); *Mobil Oil Corp. v. Va. Gasoline Marketers & Auto. Repair Ass'n, Inc.*, 34 F.3d 220, 226 (4th Cir.1994). Furthermore, in order to prevail under a false designation of origin cause of action, the *trademark holder* must prove:

---

**2.** In *Lexmark,* the Supreme Court referred to 15 U.S.C. § 1125(a)(1)(A) actions as "false association" cases. The Fourth Circuit refers to these actions as "false designation of origin" cases. *See, e.g., Universal Furniture Int'l,* *Inc. v. Collezione Europa USA, Inc.,* 618 F.3d 417 (4th Cir.2010); *Lamparello v. Falwell,* 420 F.3d 309 (4th Cir.2005). This Court follows the lead of our circuit and uses the term "false designation of origin."

(1) that it *possesses a mark;* (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Lamparello v. Falwell,* 420 F.3d 309, 313 (4th Cir.2005) (emphasis added); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.,* 43 F.3d 922 (4th Cir.1995) (noting that a plaintiff must first prove it has a protectable mark in prevail in a Section 43(a) claim).

The Court holds that Bayer does not possess a protectable interest in the FLANAX mark. Section 43(a)(1)(A) of the Lanham Act protects "qualifying" unregistered trademarks. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); S. REP. No. 100–515, at 40 (1988), 1988 U.S.C.C.A.N. 5577, 5603 (explaining that the aim of the 1988 amendments to the Act was to extend the protections given to registered marks under Section 43(a) to unregistered marks). However, that unregistered mark must be used in commerce in the United States. *See Two Pesos,* 505 U.S. at 768, 112 S.Ct. 2753 (citing 15 U.S.C. § 1127); *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,* 329 F.3d 359, 363–64 (4th Cir.2003); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 140 (4th Cir.2000). Here, Bayer failed to plead facts showing that it used the FLANAX mark in commerce in United States. *See* Bayer Compl. ¶¶ 9, 43 (explaining that Bayer Consumer Care AG has a Mexican trademark for FLANAX); (Doc. 35 ¶ 26) ("Bayer admits that Bayer Healthcare LLC *does not own any trademark rights for the mark FLANAX in any country.*"

(emphasis added)). Consequently, the Court holds that Bayer does not possess a protectable interest in the mark.

Possession of a protectable interest in a trademark is a dispositive issue in false designation of origin claims and Bayer lacks this key element. After reviewing Congress' statutory pronouncement regarding the purposes of the Lanham Act, as well as both Fourth Circuit and Supreme Court case law analyzing the Act, the Court holds that Bayer is not "within the class of plaintiffs whom Congress has authorized to sue under" Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), for false designation of origin because it does not own a protectable interest in the FLANAX mark in the United States. *Lexmark,* 134 S.Ct. at 1387. Because Bayer is not within the class of plaintiffs Congress sought to protect under Section 43(a)(1)(A), the Court holds that Bayer fails the zone-of-interests test.

### 2. *Proximate Cause*

■ Even if Bayer had satisfied the zone-of-interests test prong, the Court finds that Bayer failed to sufficiently plead facts showing that Belmora's alleged violation of Section 43(a)(1)(A) was the proximate cause of Bayer's economic or reputational injury.

#### a. *Economic Injury*

First, the Court finds that Bayer failed to sufficiently plead facts showing that Belmora's acts were the proximate cause of any economic injury. Although never explicitly stated in its Complaint, Bayer makes several allegations suggesting that it lost sales in the United States as it was not able to convert immigrating Mexican FLANAX consumers to American consumers of ALEVE, Bayer's American counterpart to its Mexican FLANAX brand. *See, e.g.,* Bayer Compl. ¶¶ 14–17.

■ It must again be emphasized that a core purpose of the Lanham Act is to "help

assure a trademark's owner that it will reap the financial and reputational rewards associated with having a desirable name or product." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 310 (4th Cir.2012) (citation and internal quotation marks omitted). Bayer's argument that it suffered cognizable economic loss under the Lanham Act because it could not convert immigrating consumers from its Mexican-trademarked brand of FLANAX to its United States-trademarked brand of ALEVE would require the Court to extend Lanham Act protections to an international mark that was not used in United States commerce. Doing so would run contrary to the purposes of the Lanham Act as the economic losses the Lanham Act seeks to prevent are those emanating from infringement of a mark protected in the United States. *See id.; Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 167 n. 3 (4th Cir.2006); *Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,* 329 F.3d 359, 363–66 (4th Cir.2003) (affording Lanham Act protections to a foreign mark that was used in United States commerce).

There are two exceptions to this general rule, neither of which have been adopted by the Fourth Circuit. First, there is the famous marks doctrine. In *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.,* the district court described the famous marks doctrine as follows:

> The famous marks doctrine is a controversial common-law exception to the

principle that the use of a mark overseas cannot form the basis for a holding of priority trademark use. Under the doctrine, a foreign mark is protectable despite its lack of use in the United States where the mark is so well known or famous as to give rise to a risk of consumer confusion if the mark is used subsequently by someone else in the domestic marketplace.

440 F.Supp.2d 249, 269 (S.D.N.Y.2006) (citations and internal quotation marks omitted). The Fourth Circuit has not yet recognized the famous marks doctrine and appears inclined to reject its application.[3] *See Int'l Bancorp,* 329 F.3d at 389 n. 9 (Motz, J., dissenting); *Maruti.com v. Maruti Udyog Ltd.,* 447 F.Supp.2d 494, 500 (D.Md.2006). Consequently, the Court holds that it does not apply.

Second, there is the diversion-of-sales theory. The diversion-of-sales theory allows extraterritorial conduct to be brought under the purview of the Lanham Act if courts find a significant effect on United States commerce as sales to foreign consumers may jeopardize the income of an American company. *See McBee v. Delica Co.,* 417 F.3d 107, 126 (1st Cir.2005). The diversion-of-sales theory is inapplicable here because: (1) the Fourth Circuit has not recognized the diversion-of-sales theory; and (2) even if it did, Belmora is selling products under the FLANAX mark to consumers in the United States and not foreign consumers—thus the extraterritorial application of the Lanham Act in that sense is not at issue.[4] *See Tire Eng'g &*

---

**3.** The Ninth Circuit is the only circuit court that has recognized the famous marks doctrine. *See Grupo Gigante SA De CV v. Dallo & Co.,* 391 F.3d 1088 (9th Cir.2004).

**4.** There are several instances where courts have considered sales diverted from American companies in foreign countries in determining whether American commerce was affect-

ed by alleged trademark infringement. *See, e.g., Totalplan Corp. of Am. v. Colborne,* 14 F.3d 824 (2d Cir.1994); *Am. Rice, Inc. v. Ark. Rice Growers Coop. Ass'n,* 701 F.2d 408 (5th Cir.1983). However, those cases are easily distinguished from this case as the plaintiffs there owned United States trademarks while Bayer does not. *See Totalplan,* 14 F.3d at 826; *Am. Rice,* 701 F.2d at 411.

*Distrib., LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 310–11 (4th Cir. 2012).

■ Because neither exception to the general rule regarding the economic losses suffered by the person or entity with a protectable interest in a trademark applies, the Court expressly declines to find that the loss of potential sales to immigrating consumers is the type of economic loss recognized by the Lanham Act as they are speculative. *See Natural Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325, 1332 (11th Cir.2008) (declaring as speculative allegations that defendant's conduct "might" cause the value of plaintiff's mark to weaken in the future if plaintiff were to reintroduce the mark into the market); *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 162 (2d Cir.2007) ("[S]ome indication of actual injury and causation is necessary to satisfy Lanham Act standing requirements and to ensure the plaintiff's injury is not speculative." (internal citations and quotation marks omitted)); *Brother Records, Inc. v. Jardine,* 318 F.3d 900, 910 (9th Cir.2003) (stating that speculative damages are not sufficient to state claim under Lanham Act), *overruled on other grounds by Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir.2010); *Joint Stock Soc'y v. UDV N. Am., Inc.,* 266 F.3d 164, 184 (3d Cir.2001) (finding that alleged damages— "the profits that Joint Stock would have made if it had sold its vodka in the United States without using the Smirnov name and had not faced the defendants' allegedly false designation of origin and false advertising"—were "extremely speculative" and were thus not cognizable under the Lanham Act). Accordingly, because Bayer did not plead sufficient facts showing that it suffered an economic loss cognizable under the Lanham Act, the Court finds that Bayer failed to sufficiently plead facts showing that Belmora's acts were the proximate cause of any cognizable economic injury.

#### b. *Reputational Injury*

■ Second, the Court finds that Bayer failed to sufficiently plead facts showing that Belmora's acts were the proximate cause of any cognizable injury to its reputation. Mere confusion by itself does not amount to reputational injury— there must also be evidence of harm resulting from the use of the allegedly infringing product.[5] *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 268 (4th Cir.2007) (concluding that there was no evidence in the record demonstrating that the reputation

---

**5.** In trademark infringement cases, a plaintiff must demonstrate both that they have a valid and protectable trademark and that that the defendant's use of a "reproduction, counterfeit, copy, or colorable imitation" thereof creates a likelihood of confusion. *See* 15 U.S.C. § 1114(1); *Swatch AG v. Beehive Wholesale, LLC,* 739 F.3d 150, 158 (4th Cir.2014) (citing *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 91 (4th Cir.1997)). In cases like this case, that confusion/likelihood of confusion exists is an inherent prerequisite in determining whether a party's reputation has been harmed. Indeed, it would be illogical for a mark holder to claim that its reputation was harmed by the acts of another business if there was not any potential confusion due to the use of the marks. *See Swatch,* 739 F.3d at 158 ("A likelihood of confusion exists between two marks if the defendant's actual practice *is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.*" (emphasis added) (citations and internal quotation marks omitted)).

What *Haute Diggity Dog* and *Beacon Mutual* represent is the idea that for a court to find that a party's *reputation* has been harmed, there must be some showing of something about the alleged infringer's use of a mark other than confusion, be it blatantly negative or deleterious, such that a mark owner's business or reputation would be harmed as a result of such use.

of LOUIS VUITTON's mark was harmed because there was no evidence that any dogs choked on a "Chewy Vuiton" toy made by alleged-infringer Haute Diggity Dog); *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 17 (1st Cir.2004) (recognizing that evidence of misdirected premium payments, claims forms, and communications on behalf of OneBeacon harm Beacon Mutual's reputation).

Bayer suggests that its reputation was harmed because Belmora's alleged deceptive marketing caused actual confusion among consumers. *See* Bayer Compl. ¶¶ 38–39, 43. In its Complaint, Bayer explained how Belmora's marketing strategy confused distributors, vendors, and others. For example, Bayer claimed that telemarketers hired by Belmora called potential distributors and suggested to them that Belmora's FLANAX products were the same as those offered by Bayer in Mexico. (*Id.* ¶ 33.) Furthermore, in a different marketing effort Belmora allegedly tried to link itself with Bayer's FLANAX by saying that Belmora's FLANAX was a brand that Latinos had turned to "for generations," and that "FLANAX acts as a powerful attraction for Latinos by providing them with products they know, trust, and prefer." (*Id.* ¶ 32.)

■■■ Despite these allegations of confusion, Bayer failed to plead sufficient facts showing any cognizable injury to its reputation resulting from Belmora's use of the FLANAX mark. Here, Bayer pleaded no facts showing harm analogous to the "choking dog" referenced in *Haute Diggity Dog*, or the evidence of misdirected premium payments and claims forms presented in *Beacon Mutual*. *See Haute Diggity Dog, LLC*, 507 F.3d at 268; *Beacon Mut. Ins. Co.*, 376 F.3d at 17. Without more, mere confusion by itself does not constitute reputational injury.

■■■■ Additionally, Bayer's contention that its reputation is harmed because

it cannot control the quality of goods sold under the FLANAX brand demonstrates a fundamental misapprehension of the protections of the Lanham Act. In a classic trademark infringement case brought under a predecessor to the Lanham Act, Judge Learned Hand explained the idea that trademark law gives mark owners the right to control the quality of goods produced thereunder:

> However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. *If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.* And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful.

*Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928) (emphasis added). Courts have long since adhered to this doctrine and agree that the Lanham Act protects the ability of *trademark holders* to control the quality of their goods. *See Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 455 (4th Cir. 2010) (citing *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir.2009); *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir.1991)). The Court finds that this doctrine is inapplicable here as the "quality control" injury is typically actionable as a trademark infringement claim. *See Lone Star Steak-*

*house & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 939 (4th Cir.1995) ("[W]e have recognized that ... trademark infringement primarily represents an injury to reputation."); *see also, e.g., Ga. Pac. Consumer Prods.,* 618 F.3d 441; *Shell Oil Co.,* 928 F.2d 104. Here, Bayer did not bring a trademark infringement claim, which includes a requirement that the plaintiff owns a valid mark. *See Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 152 (4th Cir.2012) (citing 15 U.S.C. § 1114(a); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 259 (4th Cir.2007); *PETA v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001)).

Thus, in order to assert its Lanham Act right to control the quality of its goods, Bayer must not only plead facts showing actual reputational injury under *Lexmark,* but Bayer must also show that it has a protectable interest in a mark. Here, the Court finds that Bayer did not plead facts sufficient to satisfy either requirement. Instead, Bayer simply asserted that there was confusion among consumers and vendors. That is not enough. Consequently, the Court finds that Bayer failed to sufficiently plead facts showing that it suffered economic injury due to Belmora's use of the FLANAX mark.

### 3. *Bayer Lacks Standing to Sue Under Section 43(a)(1)(A) of the Lanham Act*

The Court holds that Bayer lacks standing to sue under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), because it fails the zone-of-interests test and fails to meet the proximate cause requirement under *Lexmark.* Bayer fails the zone-of-interests test because its lack of a protectable mark renders it outside of the class of plaintiffs Congress sought to protect under Section 43(a)(1)(A). Bayer fails to meet the proximate cause requirement because it failed to sufficiently plead facts showing that it suffered economic or repu-

tational injury resulting from Belmora's use of the FLANAX mark. Accordingly, because Bayer lacks standing to sue for false designation of origin under Section 43(a)(1)(A), Belmora's Motion to Dismiss the false designation of origin claim must be GRANTED.

### B. *False Advertising*

 The Court GRANTS Belmora's Motion to Dismiss the false advertising claim because Bayer lacks standing to sue under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as Bayer did not sufficiently plead an injury to commercial interest in sales or business reputation proximately caused by Belmora's alleged misrepresentations as required by *Lexmark.* The Lanham Act "creates a federal remedy 'that goes beyond trademark protection'" by allowing competitors to sue for false advertising. *POM Wonderful LLC v. Coca–Cola Co.,* —— U.S. ——, 134 S.Ct. 2228, 2234, 189 L.Ed.2d 141 (2014) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 29, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003)). The Lanham Act imposes civil liability for false advertising on any person who:

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B). However, "the private remedy may be invoked only by those who 'allege an injury to a commercial interest in reputation or sales.'" *POM Wonderful,* 134 S.Ct. at 2234 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.,*

— U.S. —, 134 S.Ct. 1377, 1390, 188 L.Ed.2d 392 (2014)); *see also Made in the USA Found. v. Phillips Foods, Inc.,* 365 F.3d 278, 281 (4th Cir.2004) ("[T]he Lanham Act is a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising." (citations and internal quotation marks omitted)). As discussed above in the false designation of origin analysis (Part A), Bayer failed to sufficiently plead these elements. Accordingly, the Court holds that Bayer lacks standing to sue for false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and Belmora's Motion to Dismiss the false advertising claim must be GRANTED.

### C. *Counts III–V: The California Claims*

■ The Court DISMISSES Bayer's state law claims because the Court declines to exercise supplemental jurisdiction since the underlying federal claims are dismissed. Bayer's remaining claims are state law claims. Bayer alleges that Belmora violated the California Business and Professions Code § 17200 *et seq.* (unfair competition) and § 17500 *et seq.* (false advertising), as well as California common law prohibiting unfair competition.

■ 28 U.S.C. § 1367(c) provides that a district court may decline to exercise jurisdiction over a state law claim after dismissing all claims over which it had original jurisdiction. *See Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995). In deciding whether to exercise supplemental jurisdiction, a federal court should consider "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (internal citations omitted). "When the balance of these factors indicates that a case properly belongs in state court, *as when the*

*federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,* the federal court should decline the exercise of jurisdiction by dismissing the case . . . ." *Id.* (emphasis added).

Here, upon consideration of the *Cohill* factors, the Court declines to exercise jurisdiction over Bayer's state law claims of unfair competition and false advertising. Since the Court dismisses Bayer's federal claims under Sections 43(a)(1)(A) and (a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (a)(1)(B), Bayer's state law claims cannot attach to any federal claim. Therefore, the Court DISMISSES Bayer's state law claims.

### D. *Article 6bis Counterclaim*

■ The Court GRANTS Belmora's Motion to Dismiss Bayer's Counterclaim and AFFIRMS the TTAB's dismissal of Bayer's Article *6bis* claim because Bayer's claim is implausible as the Paris Convention is not self-executing and Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h), do not render Article *6bis* of the Paris Convention a ground for contesting trademark registration.

On June 29, 2007, Bayer petitioned the TTAB to cancel the registration of Belmora's FLANAX mark registration. Belmora moved to dismiss Bayer's petition for cancellation, arguing that Bayer did not have standing to bring a claim under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because it had made no use of the mark in commerce. On April 26, 2009, the TTAB issued an order granting the motion in part, and denying the motion in part. The motion was granted as to Bayer's Section 2(d), Article *6bis,* and fraud claims, and was denied as to the Section 14(3) claim.

Regarding the Article *6bis* claim, the TTAB held that Article *6bis* does not af-

ford an independent cause of action for parties in TTAB proceedings. *Bayer Consumer Care AG v. Belmora LLC*, 110 U.S.P.Q.2d 1623, 2014 WL 1679146, at \*2 (T.T.A.B.2014) (citation omitted). The TTAB further held that Section 44 of the Lanham Act does not "provide the user of an assertedly famous foreign trademark with an independent basis for cancellation in a [TTAB] proceeding, absent the use of the mark in the United States." *Id.* (citation and internal quotation marks omitted). In its Answer to Belmora's Complaint (Doc. 35), Bayer asserted a counterclaim seeking judicial review of the TTAB's ruling on Belmora's alleged violation of Article *6bis.*

▮ The Paris Convention for the Protection of Industrial Property established "a Union for the protection of industrial property." Paris Convention for the Protection of Industrial Property, Sept. 5, 1970, art. 1, 21 U.S.T. 1583, T.I.A.S. No. 6923 ("Paris Convention"). Under Article *6bis* of the Paris Convention, members must:

ex officio if their legislation so permits, or at the request of an interested party, to refuse or to cancel the registration, and to prohibit the use, of a trademark which constitutes a reproduction, an imitation, or a translation, liable to create confusion, of a mark considered by the competent authority of the country of registration or use to be well known in that country as being already the mark of a person entitled to the benefits of this Convention and used for identical or similar goods. These provisions shall also apply when the essential part of the mark constitutes a reproduction of any such well-known mark or an imitation liable to create confusion therewith.

Paris Convention art. *6bis* (providing statutory basis for the "famous marks" or "world mark" exception/doctrine).

Section 44(b) of the Lanham Act is titled "Benefits of section to persons whose country of origin is a party to convention or treaty," and provides:

Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section *under the conditions expressed herein* to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, *in addition to* the rights to which any owner of a mark is otherwise entitled by this chapter.

15 U.S.C. § 1126(b) (emphasis added). Section 44(h) of the Lanham Act "Protection of foreign national against unfair competition," and provides:

Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

15 U.S.C. § 1126(h).

### 1. *The Paris Convention is Not Self-Executing*

▮ First, the Court holds that Article *6bis* of the Paris Convention is not self-executing and that Congress implemented the Paris Convention by enacting Section 44 of the Lanham Act. The Supreme Court "has long recognized the distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law." *Medellin v. Texas,*

552 U.S. 491, 504, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008). Although treaties "may comprise international commitments ... *they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.*" *Id.* at 505, 128 S.Ct. 1346 (emphasis added) (quoting *Igartua–De La Rosa v. United States,* 417 F.3d 145, 150 (1st Cir.2005) (internal quotation marks omitted)); *see also Bond v. United States,* ⸺ U.S. ⸺, 134 S.Ct. 2077, 2084, 189 L.Ed.2d 1 (2014). A treaty may contain both self-executing and non-self-executing provisions. *ESAB Grp., Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 387 (4th Cir.2012) (citations and internal quotation marks omitted). The Supreme Court has recognized that some of the provisions of the Paris Convention dealing with patents are self-executing. *See Medellin,* 552 U.S. at 574, 128 S.Ct. 1346. Other courts and scholars have found that the Paris Convention is not at all self-executing and was implemented by Congress with the enactment of Section 44 of the Lanham Act. *See In re Rath,* 402 F.3d 1207, 1209 (Fed.Cir. 2005) ("[T]he Paris Convention is not a self-executing treaty and requires congressional implementation."); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,* 330 F.3d 617, 628 (4th Cir. 2003); *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 907–08 (9th Cir.2002); *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.,* 252 F.3d 1274, 1277–78 (11th Cir.2001); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 259 n. 1 (3d Cir.2000); *Havana Club Holding, S.A. v. Galleon S.A.,* 203 F.3d 116, 134 (2d Cir.2000); *Weil Ceramics & Glass, Inc. v. Dash,* 878 F.2d 659, 679 (3d Cir.1989) ("The Paris Convention is the law in the United States by virtue of Article VI of the Constitution and is explicitly implemented by the Lanham Act in section 44(b)...."); *Yasuko Kawai v. Metlesics,* 480 F.2d 880, 884 (C.C.P.A.1973); Anne Gilson LaLonde, *Don't I Know You from Somewhere? Protection in the United States of Foreign Trademarks That Are Well Known but Not Used There,* 98 Trademark Rep. 1379, 1391–92 (2008). Based on the overwhelming weight of authority the Court similarly holds that Article *6bis* of the Paris Convention is not self-executing and that Congress implemented the Paris Convention by enacting Section 44 of the Lanham Act.

### 2. Article 6bis, Through Section 44 of the Lanham Act, Does Not Create an Independent Cause of Action

▮ Second, the Court holds that to the extent Congress implemented the Paris Convention, Article *6bis* does not confer additional substantive rights to international mark holders through Sections 44(b) and (h) of the Lanham Act because Congress did not explicitly implement Article *6bis* when it enacted Section 44. The enactment of Section 44 of the Lanham Act incorporates the Paris Convention into United States law but only "to provide foreign nationals with rights under United States law *which are coextensive* with the substantive provisions of the treaty involved." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,* 330 F.3d 617, 628 (4th Cir.2003) (quoting *Scotch Whisky Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 597 (4th Cir.1992)); *see Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.,* 252 F.3d 1274, 1278 (11th Cir.2001) ("[T]he rights articulated in the Paris Convention do not exceed the rights conferred by the Lanham Act"); *Maruti.com v. Maruti Udyog Ltd.,* 447 F.Supp.2d 494, 501 (D.Md.2006). Bayer's argument that its Mexican FLANAX mark should be afforded the protection of a "well-known" or "famous" mark [6] under

---

**6.** The Court shall refer to the doctrine describing this term as the "famous marks exception."

Article *6bis* has been rejected by the Fourth Circuit. *See Barcelona.com,* 330 F.3d at 628 ("[T]he Paris Convention creates nothing that even remotely resembles a 'world mark' or an 'international registration.'" (citation omitted)). The Second Circuit reached a similar conclusion in *Punchgini. ITC Ltd. v. Punchgini,* 482 F.3d 135 (2d Cir.2007).

In *Punchgini,* ITC, an Indian corporation, began operating a restaurant in New Delhi, India, called "Bukhara" in 1977. *Id.* at 143. Bukhara acquired "a measure of international renown." *Id.* ITC obtained a registered United States trademark for restaurant services for the Bukhara mark in 1987 and operated restaurants in the United States under that mark until 1997. *Id.*

In 1999, Punchgini, Inc. ("Punchgini"), opened a restaurant in New York City called "Bukhara Grill." *Id.* at 144. After some success, Punchgini later opened a second restaurant in New York City. *Id.* It appeared that the Punchgini restaurants in New York City copied the Bukhara restaurants in New Delhi. *See id.* ("Quite apart from the obvious similarity in name, defendants' restaurants mimic the ITC Bukharas' logos, decor, staff uniforms, wood-slab menus, and red-checkered customer bibs.").

In 2003, ITC sued Punchgini for unfair competition under Section 43(a)(1)(A) of the Lanham Act. *Id.* at 145. Punchgini asserted that ITC had abandoned the Bukhara mark and filed a counterclaim seeking cancellation of ITC's registration of the mark. *Id.* The district court found that the defendants successfully established abandonment as a matter of law, "warranting both summary judgment in their favor and cancellation of ITC's registered mark." *Id.* at 146. The Second Circuit affirmed. Rejecting the argument that

the plain language of Sections 44(b) and (h) incorporated Article *6bis* into the Lanham Act as a valid ground for cancellation, the court first discussed the territoriality principle. *Id.* at 154.

Under the territoriality principle, "trademark rights exist in each country solely according to that country's statutory scheme." *Person's Co., Ltd. v. Christman,* 900 F.2d 1565, 1568–69 (Fed. Cir.1990). Explaining the territoriality principle, the Second Circuit in *Punchgini* noted that "United States trademark rights are acquired by, and dependent upon, priority of use." 482 F.3d at 155; *see* 15 U.S.C.A. § 1057(b) ("A certificate of registration [arms the registrant with] prima facie evidence of the validity of the registered mark and of the registration of the mark, of the [registrant's] ownership of the mark, and of the [registrant's] exclusive right to use the registered mark...."). It follows that "absent some use of its mark in the United States, a foreign mark holder generally may not assert priority rights under federal law, even if a United States competitor has knowingly appropriated that mark for his own use." *Punchgini,* 482 F.3d at 156 (citing *Person's Co. v. Christman,* 900 F.2d 1565, 1569–70 (Fed.Cir.1990)); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* No. CV 11–1623(RC), 69 F.Supp.3d 175, 201, 2014 WL 4759945, at *12 (D.D.C. Sept. 25, 2014) ("It also is a basic tenet of American trademark law that foreign use of a mark creates no cognizable right to use that mark within the United States." (citation omitted)).

In *Punchgini* the Second Circuit went on to examine the language of Section 44 to determine Congress' intent. The court held that Congress did not intend to incor-

porate a famous marks exception into federal law. *Punchgini*, 482 F.3d at 163. The court explained that "we do not ourselves discern in the plain language of sections 44(b) and (h) a clear Congressional intent to incorporate a famous marks exception into federal unfair competition law." *Id.* The court looked to Congress' amendments to the Lanham Act in an effort to ascertain congressional intent, stating that "Congress has not hesitated to amend the Lanham Act to effect its intent with respect to trademark protection, having done so thirty times since the statute took effect in 1947...." *Id.* at 164. The absence of a statutory provision incorporating either the famous mark doctrine or Article *6bis,* as well as the long-standing territoriality principle, were important factors in the court holding that "Congress has not incorporated the substantive protections of the famous marks doctrine set forth in the Paris Convention Article *6bis* ... into the relevant federal law...." *Id.* at 163–64, 172.

This Court similarly holds that Article *6bis* does not confer additional substantive rights to international mark holders through Sections 44(b) and (h) and that there is no cause of action under Article *6bis* because Congress has not acted to implement it through amendments or other statutory provisions. *See Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 720, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (finding that the Lanham Act did not allow for counsel fees because the original text did not provide for them, nor did any subsequent amendments to the statute); *cf. Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 34, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003) ("When Congress has wished to create such an addition to the law of copyright, it has done so with much more specificity than the Lanham Act's ambiguous use of 'origin.' "). Furthermore, this case is dis-tinguishable from *The Last Best Beef, LLC v. Dudas,* 506 F.3d 333 (4th Cir.2007).

One issue in *Last Best Beef* was whether Congress created an irreconcilable conflict between the Lanham Act and Section 206 of the Science, State, Justice, Commerce, and Related Agencies Appropriations Act of 2006. *Id.* at 339. In holding that Congress had created such a conflict, the Fourth Circuit pointed out that Section 206, by its plain language, directly contradicted the Lanham Act as it prohibited one very specific phrase from being trademarked. *Id.* In upholding the challenged statute, the court found that Congress intended to enact a "discrete and narrow exception to the Lanham Act...." *Id.*

Although this case does not involve two irreconcilable statutes, *Last Best Beef* is still instructive when looking at the scope of the exception being presented. Here, Bayer is asking the Court to infer, from uncertain terms in the Lanham Act, a declaration from Congress adopting the famous marks exception captured in Article *6bis,* thus creating a cause of action therein. That exception is not the same type of "narrow and discrete" exception presented by the conflict between Section 206 and the Lanham Act in *Last Best Beef See id.* Instead it is an exception that would eviscerate the territoriality principle of trademark law; a principle that has been accepted by the Supreme Court for nearly one hundred years and remains essentially unassailable in each circuit court except for the Ninth Circuit. *See Grupo Gigante SA De CV v. Dallo & Co.,* 391 F.3d 1088 (9th Cir.2004). Without a more definite statement from Congress, the Court declines to interpret the Lanham Act in that fashion. *See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona,* 330 F.3d 617, 628 (4th Cir.2003) ("It follows from incorporation of the doctrine of territoriality into United States law through Section 44 of the Lanham Act

that United States courts do not entertain actions seeking to enforce trademark rights that exist only under foreign law."); *cf.* J. Thomas McCarthy, *Lanham Act § 43(a): The Sleeping Giant Is Now Wide Awake,* 59 Law & Contemp. Probs. 45, 49 (1996) ("These other circuits reasoned that if Congress really intended to make such a *far-reaching change* as to make a federal question of any and all acts of unfair competition in interstate commerce, *it would have done so in plain and unequivocal language,* which admittedly it did not do." (emphasis added)).

Consequently, the protections provided by Article *6bis* remain coextensive with, not supplemental to, those of the Lanham Act. *See In re Rath,* 402 F.3d 1207, 1211 (Fed.Cir.2005) ("... Congress generally intended section 44 of the Lanham Act to implement the Paris Convention. But this does not mean that Congress intended to do so in every respect or that it actually accomplished that objective in all respects...."). Again, such a stark departure from the well-established principle of territoriality would require a much clearer expression of congressional intent mandating such a departure than is present before the Court here. *See Almacenes Exito S.A. v. El Gallo Meat Mkt., Inc.,* 381 F.Supp.2d 324, 327 n. 3 (S.D.N.Y.2005) ("[T]he [territoriality] principle was long established before enactment of the Lanham Act in 1946 and was already so basic to trademark law that it may be presumed to be implied in the Lanham Act."); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:51 (4th ed.2014) (observing that in *A. Bourjois & Co. v. Katzel,* 260 U.S. 689, 691, 43 S.Ct. 244, 67 L.Ed. 464 (1923), the Supreme Court accepted the principle of "territoriality" and moved away from the principle of

"universality" with trademarks). Accordingly, the Court holds that there is no cause of action under Article *6bis* because Congress has not acted to implement it.

### 3. *Bayer's Counterclaim Must Be Dismissed*

The Court GRANTS Belmora's Motion to Dismiss Bayer's Counterclaim AFFIRMS the TTAB's dismissal of Bayer's Article *6bis* claim because Bayer has failed to plead facts showing that its claim that Sections 44(b) and (h) of the Lanham Act incorporate Article *6bis* is plausible. The Paris Convention is not self-executing and Congress has not amended the Lanham Act to make Article *6bis* a ground for contesting a trademark registration. The lack of a legal foundation for such a claim renders it implausible. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Accordingly, Belmora's Motion to Dismiss Bayer's Counterclaim is GRANTED and the TTAB's dismissal of Bayer's Article *6bis* claim is AFFIRMED.[7]

### E. *Belmora's Motion for Judgment on the Pleadings*

The Court GRANTS Belmora's Motion for Judgment on the Pleadings for two reasons. First, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Bayer had standing to seek cancellation of the registration of Belmora's FLANAX mark under Section 14(3) because Bayer lacks standing to sue pursuant to *Lexmark* as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 14(3) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court

---

7. Because the Court finds that there is no independent cause of action under Article *6bis,* the Court does not reach the parties'

arguments concerning whether Bayer has sufficiently plead priority, or the requisite level of fame, prior to 2003.

GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Belmora was using the FLANAX mark to misrepresent source because Section 14(3) requires use of the mark in United States commerce and Bayer did not use the FLANAX mark in the United States.

Belmora moved the TTAB to dismiss Bayer's second amended petition, which sought, among other things the cancellation of the registration of Belmora's FLANAX mark. On April 26, 2009, the TTAB issued an order granting the motion in part, and denying the motion in part. The motion was granted as to Bayer's Section 2(d), Article *6bis*, and fraud claims, and was denied as to the Section 14(3) claim. Regarding the Section 14(3) claim, first the TTAB found that Bayer had standing to bring the claim because Bayer alleged injury stemming from Belmora's use of "strikingly similar packaging." *Bayer Consumer Care AG v. Belmora LLC*, 110 U.S.P.Q.2d 1623, 2014 WL 1679146, at *2 (T.T.A.B.2014). Second, the TTAB found that Bayer had sufficiently pleaded the claim because Bayer "alleged clearly and specifically that respondent copied petitioner's mark, including its particular display, and virtually all elements of its packaging, in order to 'misrepresent to consumers, including especially consumers familiar with Petitioner's FLANAX mark,' that respondent's product is from the same source as petitioner's product." *Id.* (citation and internal quotation marks omitted).

### 1. *Bayer Does Not Have Standing to Assert a Misrepresentation of Source Claim*

 The Court GRANTS Belmora's Motion for Judgment on the Pleadings and

REVERSES the TTAB's holding that Bayer had standing to seek cancellation of the registration of Belmora's mark under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because Bayer lacks standing to sue pursuant to *Lexmark* as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 14(3) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark.

 The TTAB cancelled Belmora's registration pursuant to Section 14(3) of the Lanham Act. Section 14(3) provides, in pertinent part, that:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged, including as a result of dilution under section 1125(c), by the registration of a mark on the principal register established by this Act, or under the Act of March 3, 1881, or the Act of February 20, 1905:
>
> (3) ... if the registered mark is being used by, or with the permission of, the registrant *so as to misrepresent the source* of the goods or services on or in connection with which the mark is used....

15 U.S.C. § 1064(3) (emphasis added). As discussed earlier, the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), provides this Court with guidance in determining whether a plaintiff has standing to bring a misrepresentation of source claim under the Lanham Act. The TTAB's analysis of standing did not apply *Lexmark*.[8]

8. The TTAB's legal framework for standing analysis is set forth below:

"The Federal Circuit has enunciated a liberal threshold for determining standing. *Alcatraz Media Inc: v. Chesapeake Marine*

Accordingly, the Court conducts the standing analysis with the benefit of that decision.

The Court holds that Bayer fails the zone-of-interests-test as Bayer is not within the class of plaintiffs Congress sought to protect in the misrepresentation of source provision of the Lanham Act because Bayer never used the FLANAX mark in United States commerce. *See H.H. Scott, Inc. v. Annapolis Electroacoustic Corp.,* 195 F.Supp. 208 (D.Md.1961) (ruling in favor of plaintiff in misrepresentation of source action who possessed a mark and used it in commerce); *see also Willis v. Can't Stop Prods., Inc.,* 497 Fed.Appx. 975, 978 (Fed. Cir.2012) (affirming dismissal of misrepresentation of source claim because defendant "at all times owned the marks at issue"); *Hill Holliday Connors Cosmopulos, Inc. v. Greenfield,* 433 Fed.Appx. 207, 218 (4th Cir.2011) (citing *Gen. Healthcare Ltd. v. Qashat,* 364 F.3d 332, 335 (1st Cir.2004)) (finding that plaintiff "failed to establish the necessary factual predicate for his trademark-cancellation claim" because he had never used the challenged mark in commerce).[9] Second, for the reasons set forth earlier in this opinion, the Court holds that Bayer cannot meet the proximate cause requirement of *Lexmark.* Accordingly, the Court holds that Bayer lacks standing to pursue a misrepresentation of source claim under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), and that Belmora's Motion for Judgment on the Pleadings as to the TTAB's decision regarding this claim must be GRANTED. The Court further holds that the TTAB's

holding as to Bayer's standing to bring a Section 14(3) claim must be REVERSED.

## 2. *Section 14(3) Requires Use of the Mark in United States Commerce*

The Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Belmora was using the FLANAX mark to misrepresent source because Section 14(3) requires use of the mark in United States commerce and Bayer did not use the FLANAX mark in the United States.

 A party may, pursuant to Section 14(3) of the Lanham Act, petition to cancel a registration of a mark if the mark "is being used by, or with the permission of, the respondent so as to misrepresent the source of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1064(3). The term "misrepresentation of source," as used in Section 14(3), "refers to situations where it is deliberately misrepresented by or with the consent of the respondent that goods and/or services originate from a manufacturer or other entity when in fact those goods and/or services originate from another party." *Osterreichischer Molkerei- und Kasereiverband Registriete GmbH v. Marks & Spencer Ltd.,* 203 U.S.P.Q. 793, 1979 WL 25355, at *1 (T.T.A.B.1979) (citation omitted); *see also Global Maschinen GmbH v. Global Banking Sys., Inc.,* 227 U.S.P.Q. 862, 864 n. 3, 1985 WL 71943, at *2 n. 3 (T.T.A.B.1985).

---

*Tours Inc.,* 107 U.S.P.Q.2d 1750, 1760 (T.T.A.B.2013). To establish standing, petitioner must prove that it has a "real interest" in this cancellation proceeding and a "reasonable basis" for its belief in damage. To prove a "real interest" in this case, petitioner must show that it has a "direct and personal stake" in the outcome herein and is more than a "mere intermeddler." *See*

*Ritchie v. Simpson,* 170 F.3d 1092, 50 U.S.P.Q.2d 1023, 1026–27 (Fed.Cir.1999)." *Bayer Consumer Care AG v. Belmora LLC,* 110 U.S.P.Q.2d 1623, 2014 WL 1679146, at *9 (T.T.A.B.2014).

**9.** *See infra* Part E(1) for a discussion of the inherent "use requirement" of Section 14(3).

According to the TTAB, in order to prevail a petitioner must show that respondent took steps to deliberately pass off its goods as those of petitioner. That is, petitioner must establish "blatant misuse of the mark by respondent in a manner calculated to trade on the goodwill and reputation of petitioner." *Otto Int'l Inc. v. Otto Kern GmbH,* 83 U.S.P.Q.2d 1861, 1863, 2007 WL 1577524, at *3 (T.T.A.B. 2007). *See generally* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 20:60 (4th ed.2014); Theodore H. Davis, Jr., *Cancellation Under Section 14(3) for Registrant Misrepresentation of Source,* 85 TRADEMARK REP. 67 (1995). Thus, in reviewing the record, courts look for evidence reflecting respondent's deliberate misrepresentation of the source of its product, "blatant misuse" of the mark, or conduct amounting to the deliberate passing-off of respondent's goods. Willful use of a confusingly similar mark is insufficient. *McDonnell Douglas Corp. v. Nat'l Data Corp.,* 228 U.S.P.Q. 45, 47, 1985 WL 71955, at *2–4 (T.T.A.B.1985).

The parties dispute whether a Section 14(3) claim requires that petitioner bringing an action to cancel a registration actually use a trademark in commerce. Belmora argues that Section 14(3) imposes a trademark use requirement "because there cannot be a source represented without at least one trademark recognized by United States law." (Doc. 56 at 11.) Bayer contends that use is not required because of the plain language of the statute and because such a reading is consistent with other provisions of the Lanham Act prohibiting registration of deceptive marks. (Doc. 64 at 4.) The Court finds that Section 14(3) contains a use requirement based on case law and a comparison of similar Lanham Act provisions.

The TTAB cited three cases in defining the rule for misrepresentation of source: (1) *Otto Int'l Inc. v. Otto Kern GmbH,* 83 U.S.P.Q.2d 1861, 1863, 2007 WL 1577524, at *3 (T.T.A.B.2007); (2) *Global Maschinen GmbH v. Global Banking Sys., Inc.,* 227 U.S.P.Q. 862, 864 n. 3, 1985 WL 71943, at *2 n. 3 (T.T.A.B.1985); and (3) *Osterreichischer Molkerei-und Kasereiverband Registriete GmbH v. Marks & Spencer Ltd.,* 203 U.S.P.Q. 793, 794, 1979 WL 25355, at *1 (T.T.A.B.1979). *See Bayer Consumer Care AG v. Belmora LLC,* 110 U.S.P.Q.2d 1623, 2014 WL 1679146, at *10 (T.T.A.B.2014). In *Otto Int'l,* the petitioner owned several marks and moved to cancel respondent's mark through a misrepresentation of source claim but the allegation was insufficiently plead as to "blatant misuse." 2007 WL 1577524, at *3 (citing *E.E. Dickinson Co. v. T.N. Dickinson Co.,* 221 U.S.P.Q. 713, 715, 1984 WL 63740, at *2–3 (T.T.A.B.1984) (finding plaintiff had properly pleaded a claim of misrepresentation of source where it pleaded that registrant marked its goods in a way that imitated petitioner's mark)). In *Global,* the petitioner "established ownership rights in the mark" and the respondent's registration was cancelled on other grounds. 1985 WL 71943, at *5. Ownership rights in a mark were present in two of the cases for misrepresentation of source and the TTAB was silent on whether the petitioner in *Marks & Spencer* owned or used a mark in commerce. *See Marks & Spencer,* 203 U.S.P.Q. 793, 1979 WL 25355.

Furthermore, Bayer's reliance on *Empresa Cubana Del Tabaco v. Gen. Cigar Co.,* 753 F.3d 1270 (Fed.Cir.2014), for the idea that Section 1064(3) has no use requirement is misplaced because of the unique nature of that case. *Empresa* involved a dispute over the COHIBA mark between the Cuban company Cubatabaco, which owned the mark in Cuba, and the American company General Cigar, which owned the mark in the United States. *Id.* at 1271. One issue before the Federal Circuit was whether Cubatabaco had

standing to initiate a cancellation proceeding before the TTAB. *Id.* at 1274. Reversing the TTAB, the Federal Circuit held that Cubatabaco had standing. *See id.* First, the court emphasized that 31 C.F.R. § 515.527 specifically authorizes Cuban entities to engage in transactions "related to the registration and renewal" of trademarks in the [PTO] and "may be relied on . . . to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national general license has an interest." *Id.* at 1275 (citation omitted). The court further reasoned that this regulation, and the related proceedings at the TTAB, gave Cubatabaco a "legitimate commercial interest" in the COHIBA mark such that a finding of standing before the TTAB was appropriate. *Id.*

The existence of 31 C.F.R. § 515.527 renders *Empresa* easily distinguishable from this case as there is no regulatory or statutory pronouncement conferring standing upon plaintiffs who possess a foreign mark but do not use it in United States commerce like Bayer. Moreover, the Court finds that the regulation at issue in *Empresa* specifically confers standing on Cuban entities for matters at the PTO and the United States Copyright Office ("Copyright Office"). *See* 31 C.F.R. § 515.527. Though the Second Circuit's earlier decision in the *Empresa* case was silent on the issue of whether the regulation would similarly confer standing before an Article III tribunal, *see Empresa Cuba-*

*na del Tabaco v. Culbro Corp.,* 399 F.3d 462 (2d Cir.2005), a plain reading of its language leads this Court to find that § 515.527's grant of standing is limited only to matters before the PTO and Copyright Office. *See Crespo v. Holder,* 631 F.3d 130, 133 (4th Cir.2011) ("When interpreting statutes we start with the plain language. It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (citations and internal quotation marks omitted)). Accordingly, the Court finds that *Empresa* is not persuasive authority on this issue.

Belmora sought to distinguish Bayer's argument that Section 14(3) "imposes no use requirement" in two ways: (1) by pointing out that Bayer relied on Section 2(d), which unlike Section 14(3), explicitly requires domestic use of a mark, *see* 15 U.S.C. § 1052(d) ("Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned . . . ."); and (2) stating that although Section 43(a)(1)(A) has no reference to use, in *Lamparello* the Fourth Circuit held that to establish a claim under that section a party must, among other things, prove that it "possesses a mark." (Doc. 56 at 11) (citing *Lamparello v. Falwell,* 420 F.3d 309, 313 (4th Cir.2005)). A further analysis of Section 43(a)(1)(A) is warranted.[10]

---

**10.** The Court must look to other statutes because of the sparse number of Section 14(3) actions brought in federal courts. "As a vehicle for canceling federal registrations, Section 14(3)'s misrepresentation of source prong has been invoked infrequently, much less successfully used." Theodore H. Davis, *Cancellation Under Section 14(3) for Registrant Misrepresentation of Source,* 85 TRADEMARK REP. 67, 88 (1995). This may be due, in part, to the expansion of the meaning of "origin" in Sec-

tion 43(a) false designation of origin claim to include *"origin of source,* sponsorship, or affiliation . . . ." J. Thomas McCarthy, *Lanham Act § 43(a): The Sleeping Giant Is Now Wide Awake,* 59 LAW & CONTEMP. PROBS. 45, 58 (1996) (emphasis added) (citing *Federal–Mogul–Bower Bearings, Inc. v. Azoff,* 313 F.2d 405 (6th Cir.1963)). As offered by McCarthy:

This seemingly simple new spin put on the word "origin" raised the curtain on a

Section 43(a)(1)(A) prohibits false designations of origin and false descriptions. It provides that a civil action may be brought by:

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ....

15 U.S.C. § 1125(a)(1)(A). Although not explicitly stated in the plain language of the statute, courts have consistently found that plaintiff's use of a trademark in United States commerce is a threshold element of any Section 43(a)(1)(A) claim.

In *Punchgini*, the Second Circuit held that a plaintiff cannot be successful on a Section 43(a)(1)(A) claim without first demonstrating its "own right to use the mark" in question. 482 F.3d 135, 154 (2d Cir. 2007). Because ITC had abandoned its mark and Punchgini was thereafter using the Bukhara mark in United States commerce, the court found that ITC did not have a "priority right" to use the mark because it had abandoned the mark and thus could not succeed on a Section 43(a)(1)(A) claim.

In *International Bancorp*, the Fourth Circuit found that a foreign entity had a protectable interest in its foreign mark related to casino services and could thus bring a trademark infringement claim under Section 43(a) against a domestic actor because it used the mark in United States commerce when it advertised its foreign casino in the United States. *Int'l Bancorp, LLC v. Société des Bains de Mer et du Cercle des Éstrangers a Monaco*, 329 F.3d 359, 361 (4th Cir.2003); *see also Larsen v. Terk Techs. Corp.*, 151 F.3d 140, 146 (4th Cir.1998) (stating that to receive protection under Section 43(a) a trademark must be used in commerce); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir.1995) (declaring that trademark infringement under Section 43(a) requires that plaintiff prove it has a protectable mark that is used in commerce).

These cases make it is clear to the Court that although Section 43(a)(1)(A), by its terms, does not require use of the mark, courts have consistently required a plaintiff to use the mark in United States commerce in order to state a claim under that statute.

"The intent of [the Lanham Act] is to regulate *commerce* within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce...." 15 U.S.C. § 1127 (emphasis added). With that in mind, after comparing the language of Sections 14(3) and 43(a), and reviewing both TTAB decisions and case law, this Court finds it appropriate to read a use requirement into Section 14(3). Accordingly, because Bayer did not use the FLANAX mark in the United

---

whole new chapter in federal unfair competition law. It heralded the beginning of a new dimension of section 43(a) as a vehicle to assert in federal court a traditional case of infringement of an unregistered mark, name, or trade dress.

McCarthy, *supra* at 58; *see, e.g., Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F.Supp.

1071, 1077 (S.D.N.Y.1979) (stating that Section 43(a) was enacted "to protect consumers and competitors alike against all forms of misdescription or misrepresentation of products and services in commerce"); Davis, *supra* at 86 (declaring that a "confused" body of case law has arisen from misrepresentation of source claims).

States, its Section 14(3) action must fail and Belmora's Motion for Judgment on the Pleadings as to misrepresentation of source is GRANTED. Further, the TTAB's holding as to misrepresentation of source must be REVERSED.

## III. CONCLUSION

The Court GRANTS Belmora's Motion to Dismiss Complaint for two reasons. First, the Court GRANTS Belmora's Motion to Dismiss the false designation of origin claim because Bayer lacks standing to sue under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), pursuant to *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* — U.S. —, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014), as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 43(a)(1)(A) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion to Dismiss the false advertising claim because Bayer lacks standing to sue under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as Bayer did not sufficiently plead an injury to commercial interest in sales or business reputation proximately caused by Belmora's alleged misrepresentations as required by *Lexmark.* Furthermore, the Court DISMISSES Bayer's state law claims because they have no federal claim to attach to as both of the federal claims are dismissed.

The Court GRANTS Belmora's Motion to Dismiss Bayer's Counterclaim and AFFIRMS the TTAB's dismissal of Bayer's Article *6bis* claim because Bayer's claim that it can bring an action under Article *6bis* against Belmora is implausible as the Paris Convention is not self-executing and Sections 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h), do not make Article *6bis* of the Paris Convention a ground for contesting trademark registration.

The Court GRANTS Belmora's Motion for Judgment on the Pleadings for two reasons. First, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Bayer had standing to seek cancellation of the registration of Belmora's FLANAX mark under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), because Bayer lacks standing to sue pursuant to *Lexmark* as Bayer's interests do not fall within the zone of interests Congress intended to protect under Section 14(3) and Bayer did not sufficiently plead economic injury or an injury to business reputation proximately caused by Belmora's use of the FLANAX mark. Second, the Court GRANTS Belmora's Motion for Judgment on the Pleadings and REVERSES the TTAB's holding that Belmora was using the FLANAX mark to misrepresent source because Section 14(3) requires use of the mark in United States commerce and Bayer did not use the FLANAX mark in the United States.

The TTAB decision found that Belmora not only copied the logo and trade dress of Bayer's FLANAX, but also made statements inferring an association between Bayer's FLANAX and Belmora's FLANAX. *See Bayer Consumer Care AG v. Belmora LLC,* 110 U.S.P.Q.2d 1623, 2014 WL 1679146, at *11–12 (T.T.A.B.2014) ("I'm with *Belmora LLC,* we're the direct producers of **FLANAX** in the US. **FLANAX** is a well-known medical product in the Latino American market, for FLANAX is sold successfully in Mexico, Centre [sic] and South America." (emphasis in original) (citation and internal quotation marks omitted)). The TTAB found that retail customers and consumers exposed to Belmora's statements "would draw the logical conclusion that [Belmora's] U.S. prod-

uct is licensed or produced by the source of the same type of product sold under the FLANAX brand for decades south of the border." *Id.* at *12 (citations omitted).

Assuming these facts to be true, the Court notes that Belmora applied to register the FLANAX mark in 2003. Bayer asserts that it has been using the FLANAX mark in Mexico since the 1970's. Bayer attempted to register FLANAX in the United States in 2004 but the PTO rejected the application based on Belmora's preexisting efforts to register the mark. (Doc. 35 ¶¶ 32–36.) The PTO issued Belmora the registration for the FLANAX mark on February 1, 2005. By registering the FLANAX mark and using it in United States commerce, Belmora established priority rights over the mark. Bayer, an entity that possesses a foreign FLANAX mark but has never used that mark in United States commerce, cannot usurp these rights.

 In sum, the Court holds that the Lanham Act does not permit Bayer, the owner of a foreign FLANAX mark that is not registered in the United States and further has never used the mark in United States commerce, to assert priority rights over Belmora's FLANAX mark that is registered in the United States and used in United States commerce. Though Belmora's practices may seem unfair, the Lanham Act "does not regulate all aspects of business morality." *Selfway, Inc. v. Travelers Petroleum, Inc.*, 579 F.2d 75, 79 (C.C.P.A.1978). Consequently, the TTAB's decision cancelling the registration of Belmora's FLANAX mark must be reversed.

Accordingly, it is hereby

**ORDERED** that Belmora LLC's Motion to Dismiss Bayer Consumer Care AG and Bayer Healthcare's Complaint (Doc. 36) is **GRANTED**; it is further

**ORDERED** that Belmora LLC's Motion to Dismiss Bayer CC AG's Counterclaim (Doc. 45) is **GRANTED** and that the TTAB's dismissal of Bayer's Article *6bis* claim is **AFFIRMED**; it is further

**ORDERED** that Belmora's Motion for Judgment on the Pleadings (Doc. 55) is **GRANTED** and that the TTAB's holdings that (1) Bayer had standing to bring a misrepresentation of source claim, and (2) that Belmora misrepresented the source of FLANAX under Section 14(3) are **REVERSED**; and it is further

**ORDERED** that the TTAB's April 17, 2014, decision cancelling the registration of Belmora's FLANAX mark, Registration No. 2924440, is **REVERSED and the mark is ORDERED to be reinstated.**

**IT IS SO ORDERED.**